UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
07-61438-CIV-COHN

MARVIN A. KATZ, et al. On behalf
of himself and all others similarly situated,

      Plaintiff,

v.

MRT, LLC, MRT HOLDINGS, LLC, JAMES
CLEMENTS, ZEINA SMIDI AND ANN B.
BRADSHAW,

      Defendants.

_____/

## PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

This case involves several small investors who lost their savings through a Ponzi scheme fraud wherein investors were solicited to trade "FOREX" investments in exchange for promised interest rates as high as over eleven percent a month. The fraud was perpetrated by and through the Defendants[1], financial institutions who undertook fiduciary obligations allowing them to reap both significant fees and investors' trust, only to stand by silently, allowing the Ponzi scheme principals to steal over 50 million of investors' money. The investors who comprise the plaintiff class possess claims that present common, predominate issues of law and fact, based upon the Defendants' silence in the face of a duty to disclose, and which involved a common fraudulent scheme and enabled a market for the Ponzi scheme securities. Such circumstances render class treatment not merely

_____

[1]. Defaults have been entered against Defendants MRT Holdings LLC, James Clements and Zeina Smidi. Defendants Ann Bradshaw and MRT LLC were dismissed for lack of service. However, Plaintiffs recently learned that MRT LLC was in fact served on March 6, 2008, and ask the Court to set aside its order of dismissal as to MRT LLC, and enter a default against it as well.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    2

appropriate, but essential for meaningful relief. Accordingly, Plaintiffs respectfully request that the

Court grant Class Certification.

## I. OVERVIEW OF THE CASE

Plaintiffs are representative of several investors in a Ponzi scheme that is the subject of this

action.  The victims are mostly from the United States, and made relatively modest investments in the

hopes of achieving the safe return promised them by MRT Holdings, LLC, MRT, LLC, James

Clements, Zeina Smidi and Ann Bradshaw (collectively, the "Defendants"). Instead, because of the

Defendants' fraud, investors in the FOREX scheme have collectively lost millions of dollars meant

to fund their retirements and the education of their children. The Defendants affirmatively undertook

a fiduciary obligation to disclose to Plaintiffs everything they knew about FOREX. Despite that they

remained completely silent as investors' funds were stolen. Since March 2006, FOREX and the

Defendants jointly offered promissory note investments to the public. The investments were offered

for the purpose of allowing MRT to trade in foreign currencies, purportedly through unidentified

Swiss banks.  In return for this investment capital, MRT and the individual Defendants promised

investors fixed rates of return as high as over one hundred percent (100%) annually, payable in

monthly interest payments.

The investments were sold through various means, including direct solicitation by Clements

and Bradshaw; internet advertising, sales meeting held in Tennessee; and through a pyramid

marketing scheme. MRT purports to manage its FOREX trading activities.  MRT, the individual

Defendants, and yet-unnamed co-conspirators have used the United States mails, telephones, and the

internet to market their investments contracts.

MRT operates a website, www.mrt.moonfruit.com, which contains statements like "MRT is a[n] international management company that specializes in many difference products and services. We currently offer two different types of accounts, including a CD style account and a Savings style account.  Our diversified portfolio includes stocks, bonds, currency trading, credit derivatives, arbitrage, metals, and real estate.  Our bankers, traders and financial advisors are all employed by or affiliated with Swiss banks."

The website offers a brief description of MRT and brief descriptions of MRT's purported business. Both are false and falsely represent as follows:

> "MRT Holdings can receive, manage, and invest third party Funds. It can conduct business with clients worldwide through the internet. * * * MRT Holdings offers savings accounts, investment accounts, brokerage services, and asset protection services. * * * Our diversified portfolio includes stocks, bonds, currency trading, credit derivatives, arbitrage, metals, and real estate. One investment strategy used is Algorithms. Algorithms is a mathematical computerized technology that provides significant benefits in investing and trading applications, such as, stock prices,  determining asset allocation, forecasting portfolio changes and prediction of foreign exchange rates. * * * Our bankers, traders and financial advisors are all employed by or affiliated with Swiss banks. Each one holds the proper credentials to meet Swiss law and the banks['] requirements. They are all CFA's (Certified Financial Advisors) and/or CAIA's

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    4

(Chartered Alternative Investment Analysts) and hold a BA and

MBA."

In March 2007, MRT sent out a letter to its current investors. The letter continued to mislead investors by saying, for example, "MRT LLC [h]as had two great years in our currency trading accounts." That letter is attached hereto as Exhibit A and is incorporated herein by reference. During a personal meeting at Shells Restaurant with investors like Plaintiff Ricky Tate, Defendant Clements repeated statements that he, Bradshaw, and MRT has made to the public at large through MRT's website. During this April 2006 meeting at Shells Restaurant, Clements knowingly and falsely stated that MRT traded in foreign currencies outside of the United States and did so through Swiss banks, which he never identified. Cements also said that investors' interest payments depended entirely upon the efforts and success of MRT's activities in trading currency options and **various** securities, Clements further misrepresented that MRT's activities were profitable.

During sales meetings, held in Tennessee, Bradshaw and Clements promised potential investors that investors could become millionaires if the investors purchased MRT's investment contracts.  In fact, all of the statements alleged herein were false and misleading when those statements were made by the Defendants. In fact, MRT's trading activities, if any occurred at all, caused MRT to incur huge losses. MRT was not profitable. It was, in fact, a classic Ponzi scheme that offered and sold unregistered investment contracts.

Defendants also knowingly misled investors to believe that their offering Of investment contracts was, in all respects legal, when, in fact, Defendants knew it was not.  MRT has consistently been dependent upon new investors to fund its current obligations to investors.  MRT's true financial

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    5

condition and its total dependency upon new investors has not been revea1d to the class. The Class

has reasonably relied on Defendants' misstatements identified herein, and the misstatements and

wrongs complained of herein are both the direct and proximate cause of the class's financial losses.

## II. LEGAL ANALYSIS

Opinions of the Supreme Court and the Eleventh Circuit have recognized that the

commonality, typicality and adequacy of representation elements tend to merge, and the ultimate

question is whether the named Plaintiffs have claims similar to the rest of the class and can

adequately represent those interests[2]. The key inquiry "is not whether Class Representatives have

stated a cause of action, or will prevail on the merits, but rather whether the requirements of Rule

23(a) are met."[3] Although Plaintiffs have the burden of showing that the requirements of Rule 23

have been satisfied, "the court is instructed to resolve any doubt in favor of class certification."[4] As

the Manual for Complex Litigation notes, "the determination whether the prerequisites of Rules

23(a) and (b) are satisfied can generally be made on the pleadings and declarations, with relatively

little need for discovery."[5] Similarly, Newberg's class action treatise notes, "most courts have

reached initial class determinations without the aid of additional information enlisted by the parties

---

[2]*Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1022-23 (11th Cir. 1996).

[3]*Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971)

[4]
*Neumont v. Monroe County, Florida*, 198 F.R.D. 554, 557 (S.D. Fla. 2000) (citing *In re Carbon Dioxide Antitrust Litig*., 149 F.R.D. 229, 232 (M.D. Fla. 1993)). One of the reason that class certification is generally favored is that a court may revisit decision on class certification as the discovery process evolves. See Fed. R. Civ. P. 23(c)(1); *General Telephone Co. v. Falcon*, 457 U.S. 147, 160 (1982)("even after a certification order in a class action is entered, the judge remains free to modify it in the light of subsequent developments in the litigation"); *Leszczynski v. Allianz Ins. Co.*, 176 F.R.D. 659, 670 (S.D. Fla. 1997); *Boucher v. Syracuse University*, 164 F.3d 113, 118 (2d Cur, 1999)(District courts may reassess class certification rulings).

[5]MANUAL FOR COMPLEX LITIGATION, 3d, § 30:2 at 215 (1995)(emphasis added).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    6

through pretrial discovery."[6] Because the prerequisites of Rule 23(a) and (b)(3) are satisfied in this

case, Plaintiffs respectfully request that the Court certify this case as a class action.

    A. **The four prerequisites of Rule 23(a) are satisfied**

    Rule 23(a) contains four prerequisites for class certification: (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy. In order to obtain class certification, Plaintiffs must

demonstrate that all four prerequisites of Rule 23(a) are satisfied, and that one or more elements of

Rule 23(b) is met as well. The Court can accept the facts as alleged in the complaint as true, since

the Defendants in this case have defaulted, after being served with the Class Action Complaint.

    **1. The Class is numerous.**

    Class certification is appropriate in cases where, as here, the class is so numerous that joinder

of all class members would be impracticable.[7] The test requires a showing of impracticality, not

impossibility. Precise enumeration of the number of class members is unnecessary,[8] as Plaintiffs

"must only establish that joinder is impracticable through 'some evidence or reasonable estimate of

the number of purported class members.'"[9] There is "no definite standard as to the size a given class

must attain in order to satisfy Rule 23(a)(l)."[10] According to a letter from MRT, MRT raised as much

as $50 million from clients, and aggrieved investors known to proposed class counsel have estimated

---

[6]3 NEWBERG ON CLASS ACTIONS, § 7:03, at 7-15 (3d ed. 1992).

[7]
*See D.W. by M.J. on behalf of D.W. v. Poundstone*, 165 F.R.D. 661 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993); *Fifth Moorings Condominiums, Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979); 1 NEWBERG ON CLASS ACTIONS 3d § 3.04 (1992).

[8]*Fifth Mooring Condominium*, 81 F.R.D. at 716, *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D. Fla. 1993).

[9]*Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987)(quoting *Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030, 1038 (5th Cir. Unit A July 1982)).

[10]*Tapken v. Brown*, No.  90-691-CIV, 1992 WL 178984 at *26 (S.D. Fla. March 13, 1992).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    7

that hundreds of class members exist, having attended one or more promotional seminars conducted

by MRT. See Exhibit A.

      In this case, the Class is defined as:

> All purchasers of MRT's investment contracts, who purchased during
>
> the Class Period, and who were damaged thereby. Excluded from the
>
> Class are the Defendants, MRT's officers, executives, and members
>
> of their immediate families, their legal heirs or representatives,
>
> successors or assigns, or any entities in which Defendants have or
>
> had a controlling interest.

This Class consists of several investors residing throughout the United States and Europe. The

individual Class members are ascertainable, as the names, addresses, investment records, and

investment amounts should be identifiable in the business records maintained by the Defendants.[11]

Members of the Class are so numerous and geographically dispersed that joinder of all Class

members is not feasible. Class counsel has received phone inquiries and emails from investors

around the country, and Canada. These facts satisfy the numerosity standard.

      **2. Plaintiffs' claims present questions of law and fact that are common to the**

          **Class.**

Rule 23(a)(2) requires that there be questions of either law or fact common to the Class. The

---

[11]. Although MRT no longer answers its phones, an investigation has revealed that records
are still available, and counsel is in the process of securing the records.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                                8

threshold of commonality is "not high."[12] The rule does not require that all class members have the

exact same legal claims,[13] nor does it require that *all* the questions of law or fact be common.[14]  In

fact Rule 23(a)(2) only "requires that there is at least *one issue* affecting all or a significant number

of proposed class members."[15] The focus is on whether the representative's claims arises from the

same course of conduct that gives rise to the class' claims, and whether the claims are based on the

same legal theory.[16]

Where allegations of wrongdoing involve a common course of conduct that allegedly

affected all class members in a substantially similar way, the class members' claims will typically

involve common questions of law or fact.[17] Likewise, commonality is satisfied where charged

behavior is alleged to have caused a common effect.[18] Considering that all of the Class members

here have essentially the same material relationship with Defendants — they were induced to invest

with FOREX by Defendants' assurances and they suffered losses as a direct result of Defendants'

---

[12]*Campos v. Immigration and Naturalization Service*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citing *Forbrush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

[13]*Kreuzfeld A.G. v. Carnehammar,* 139 F.R.D. 594, 599 (S.D. Fla. 1991).

[14]*See Singer v. AT&T Corp.*, 185 F.R.D. 681, 687 (S.D. fla. 1998); *Walco Investments, Inc. v. Thenen*, 168 F.R.D. at 325; *Haitian Refugee Center, Inc. v. Nelson*, 694 F. Supp. 864, 877 (S.D. Fla. 1988); *Fifth Moorings*, 81 F.R.D. at 717.

[15]*Singer v. AT&T Corp.*, 185 F.R.D. at 687 (emphasis added); *Walco Investments*, 168 F.R.D. at 325 (emphasis added).

[16]*See Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. at 599 (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982)("the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members.").

[17]*Haitian Refugee Center*, 694 F.Supp. At 877. *See also In re Amerifirst Securities Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991).

[18]*CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D. Fla 1991); *Lawson v. Wainwright*, 108 F.R.D. 450, 458 (S.D. Fla. 1986)(commonality satisfied where basic pattern of action or inaction on the part of defendant causes, or has the potential for causing, all class members to be subjected to challenged practices and conditions).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    9

omissions — this case satisfies the requirements of commonality.

Moreover, there are questions of law and fact common to the Class. Such questions include:

A.     Whether Defendants' conduct violated the federal securities law, as alleged;

B.     Whether Defendants offered and sold unregistered securities;

C.     Whether Defendants' statements to the investing public during the Class Period materially misrepresented MRT's business and financial condition;

D.     To what extent the Class suffered damages, and whether the Class stand entitled to rescind their transactions with MRT.

These questions of law and fact, common to each member of the Class, satisfy Rule 23(a)(2).

This case is based primarily on Defendants' omissions, which effectively harmed every class member in the same way, by depriving them of material information that would have led them to not entrust their money to FOREX and Defendants. That is, Defendants acted intentionally or with deliberate recklessness in that they knew their securities were unregistered and that the statements they made disseminated to the investing public were false when made. Defendants were motivated to engage in this fraudulent conduct because, it is believed, that Defendant, as is the case in every Ponzi scheme, financed extravagant lifestyles for themselves from the proceeds of their illegal securities offerings.

The Eleventh Circuit has recognized that where allegations of wrongdoing arise from a common practice or course of conduct in relation to the class members, the class members' claims will involve common questions or law and fact.[19] Even if there are factual discrepancies among tIe

---

[19]See *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987); *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983); *see also Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968)l *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill.1992); *Powers v. Stuart-James Co., Inc.*, 707 F. Supp. 499 (M.D. Fla. 1989). *See also Walco Investments, Inc. V. Thenen*, 168 F.R.D. at 325 (where Plaintiffs alleged a unified scheme to defraud investors, "common questions are usually found.").

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    10

Class claims, and possible individualized defenses to those claims, the commonality rule is satisfied where, as here, each claim is the result of Defendants' wrongful conduct. Accordingly, under any one of the three theories of liability articulated by Plaintiffs, or under all of them, the requirements of commonality are met.

### 3. Plaintiffs' claims are typical of those presented by the Class.

This case also satisfies Rule 23(a)(3), which requires that Plaintiffs' claims be typical of the claims of other members of the Class. "[T]he central inquiry in determining whether a proposed class has satisfied the 'typicality' requirement is whether the 'class representative [is] party of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members."[20]

Stated another way, typicality is satisfied where, as here, Plaintiffs' claims "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory."[21] In determining typicality, the court should "focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large."[22] The "mere presence of factual distinctions will not defeat typicality."[23]

---

[20]*Leszczynski v. Allianz Ins. Co.*, 176 F.R.D. at 672 (quoting *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

[21]*Walco Investments, Inc. v. Thenen*, 168 F.R.D. at 326. *See also CV Reit, Inc. v. Levy*, 144 F.R.D. at 697 (typicality is satisfied where the interest of the named parties arise from the same course of conduct that have rise to the claims of the class they seek to represent and are based upon the same legal theories).

[22]*Campos v. Immigration and Naturalization Service*, 188 F.R.D. at 661 (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)). *See also Green v. Mansour*, 474 U.S. 64 (1985); *Fornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Kennedy v. Tallant*, 710 F.2d 71,,717 (11th Cir. 1983); *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir. 1985) ("typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or...the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'").

[23]*Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1998).

> Plaintiffs' claims need only be typical, not identical.
>
> The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore typicality will not be destroyed by factual variations.[24]

Plaintiffs' claims are typical because they arise from the same events, conduct or practices giving rise to the claims of absent class members, and seek the same relief Plaintiffs' claims are typical of the claims of the absent Class members because they have all been harmed by Defendants' material omissions and Defendants' scheme and artifice to defraud in the same way. Plaintiffs' interests are sufficiently aligned with the interests of absent Class members to ensure that Plaintiffs, as class representatives, will prosecute the claims of the Class with diligence and care.

By virtue of the default by the Defendants in this case, the Court can presume that Defendants knowingly or recklessly omitted to inform the Class of the material information known to them about FOREX despite their acceptance of a duty to make those disclosures, and thus all putative Class members have the same claims. That is, Plaintiffs all invested with FOREX and Defendants, deprived of the same material information known to Defendants, and suffered losses as a result.

By virtue of Defendants' default in this action, the Court can presume that, as a result of their

---

[24]*See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d at 1337.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                                    12

fraud on the market, Defendants defrauded all members of the class in the same way by creating a

market for FOREX securities which, but for their fraud, would not have existed. Plaintiffs purchased

FOREX securities in and as a result of that market, and were harmed. Since the Defendants

"committed the same unlawful acts in the same method against an entire class ... all members of this

class have identical claims," and the typicality requirement is satisfied.[25]

     **4. Plaintiffs and their counsel will fairly and adequately represent the interests**
      **of the Class.**

     Like the three preceding requirements of Rule 23(a), the adequacy requirement found in Rule

23(a)(4), which requires that Plaintiffs demonstrate (i) that "the plaintiffs attorney is qualified,

experienced and will competently and vigorously prosecute the suit;" and (ii) "that the interest of

the

class representative is not antagonistic to or in conflict with other members of the class," is satisfied

here.[26]

         **a. The Representative Plaintiffs**

     Plaintiffs will protect and advance the interests of Class members, and their interests are not

antagonistic to those of the Class. While it is not necessary for Plaintiffs to "demonstrate to any

particular degree that individually they will pursue with vigor the legal claims of the class."[27]

Plaintiffs are prepared to pursue their claims to the fullest extent possible.

     Courts do not require the representative plaintiffs to be the "best of all possible Plaintiffs or

---

[25]*Kennedy v. Tallant*, 710 F.2d at 717. *Accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d at 725.

[26]*Powers v. Stuart-James Co., Inc.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998)(citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)).

[27]*Kirkpatrick v. J.C. Bradford & Co*., 827 F.2d at 727.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    13

to be especially knowledgeable, intelligent, or possessing a detailed understanding of the legal or

factual basis on which a class action can be maintained."[28] For example, a plaintiffs lack of

knowledge concerning a defendant's illicit conduct does not render her inadequate.[29] In discussing

Rule 23(a)(4)'s adequacy requirernrnt, Judge Highsmith held that:

> It is well settled that it is not necessary for named class
> representatives to be knowledgeable, intelligent or have a firm
> understanding of the legal of factual basis on which the case rests in
> order to maintain a class action... This is especially true in cases
> involving complex areas of the law.
>
> The record reveals that [plaintiff] is playing an active role in the
> litigation. [Plaintiff] has appeared for deposition, produced
> documents and confers with counsel. The mere fact that [plaintiff] is
> not well versed in insurance law or the intricacies of her case does
> not warrant a finding that she is inadequate to represent the class.[30]

---

[28]*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966); *see also, Kaplan v. Pomerantz*, 131 F.R.D. 118, 121 (N.D. III. 1990)("[A] layman cannot be expected to explain in detail all of the intricacies of a complex... lawsuit.").

[29]See *Walco Investments, Inc. v. Thenen*, 168 F.R.D. at 327-28 (noting a lack of knowledge by named plaintiffs is understandable given complexity of case).

[30]*Powers v. Stuart-James Co., Inc.*, 192 F.R.D. at 317-18 (citations omitted).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    14

"The requirement that claims or defenses of the representative party be typical of fit claims or defenses of the class is satisfied as long as the representative has no interests that conflict with members of the class."[31] There has been no showing that these Plaintiffs have any interests outside of those of the entire class, or that the claims will not be actively pursued. Plaintiffs are committed to playing active roles in this litigation. Plaintiffs are ideal class representatives who will fairly, honestly and adequately represent the best interests of the Class. Nothing more is required.

### b. Class Counsel

The second prong of the test for whether there is adequate representation — assurance that the action will be vigorously prosecuted — is also satisfied in this action. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiffs attorney."[32]

Under Federal Rule of Civil Procedure 23(g1)(c), the Court

(i) must consider:

- The work counsel has done in identifying or investigating potential claims in

    the action,

- Counsel's experience in handling class actions, other complex litigation, and

---

[31]*See Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D. III. 1973)(citing *Cannon v. Texas Gulf Sulphur*, 47 F.R.D. 60, 63 (S.D.N.Y. 1969)).

[32]1 NEWBERG ON CLASS ACTIONS 3d (1992) § 3.24 at 3-133 n. 353. *See also Kirkpatrick v. J.C. Bradford & Co.*, 827 f.2d at 726 (question of adequacy on plaintiffs most often "involve[s] questions of whether plaintiffs' counsel are qualified, experience, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class")(quoting *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985)).

claims of the type asserted in the action,

- Counsel's knowledge of the applicable law, and

- The resources counsel will commit to representing the class;

(ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;...

Applying these standards, the record establishes that Plaintiffs' counsel satisfies the requirements of Rule 23(g). Plaintiffs' counsel, Sonn & Erez, PLC, are very knowledgeable regarding and have extensive experience in securities cases, enjoying an "AV" rating by Martindale Hubbel in securities law. Jeffrey Sonn, Esq. has been practicing since 1988 in the areas of complex commercial litigation, securities arbitration and litigation, and class action litigation, including similar cases involving professional liability and actions involving misconduct by financial institutions. Mr. Sonn litigated to a successful conclusion two prior class actions: a class action of 1,100 homeowners against Lennar Corporation in a case alleging widespread misrepresentation in the sales of homes in 23 home communities, Sims vs. Lennar,CL97-8577 AI (Palm Beach Cir. Ct.), and the fraudulent sale of unregistered securities in Schneider vs. Service Five Investments, Case No. 03-23361-civ-Martinez, first filed in federal court, but then stayed in favor of a state court receivership, ultimately resulting in an 80% payout to investors. Mr. Sonn also has represented large groups in investors in securities cases, such as represented 41 investors in complex securities arbitrations involving the sale of complex collateralized mortgage obligation investments known as Inverse Floaters, resulting in a multi-million dollar recovery for investors, and 25 investors in the fraudulent sale of securities, successfully resolved in an NASD arbitration. Mr. Sonn's primary practice area is securities litigation and arbitration, and has represented investors hundreds of securities related cases, such as Ponzi schemes, unregistered securities cases, 10b(5) and common

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    16

law fraud cases, violations of the Florida Securities and Investors Protection Act, and violations of

FINRA regulations (Financial Regulatory Authority, fka the National Association of Securities

Dealers). Mr. Sonn is presently a member of the board of directors of the Public Investors

Arbitration Bar Association, the national bar association for securities attorneys who represent

investors in securities arbitration. Mr. Sonn graduated from the University of Miami School of Law

in 1988, where he as an Associate Editor of the InterAmerican Law Review, and following

graduation, worked at two prestigious Miami law firms, Gilbride Heller and Brown, PA, and

Mishan, Sloto, Hoffman and Greenberg PA (fka Cristol Mishan and Sloto), before opening his own

law firm in 1995. Mr. Sonn is a member of the Florida Bar since 1988, a member of the federal bar

since 1989 (and trial bar since 1991) for the US District Court for the Southern District of Florida.

Mr. Sonn has also published securities related articles, such as The ABC's Mortgage Backed

Securities,"   "How CPA's Can Detect Stockbroker Fraud.", "Group Arbitration Techniques," and

"Survey of Arbitrator Misconduct". The efforts of counsel for Plaintiffs thus far in this case show

that we are committed to the vigorous prosecution of this action and possess the skills necessary for

such efforts. The Court should accordingly hold that Sonn & Erez, PLC are adequate under Rule

23(g), and appoint us as class counsel.


### B. Plaintiffs' Claims are Maintainable Under Rule 23(b)(3).

In addition to satisfying the Rule 23(a), Class Representatives must also satisfy one of the

three subsections of Rule 23(b).[33] In this case, the requirements of Rule 23(b)(3) are met.

Rule 23(b)(3) mandates that questions of law or fact common to the members of the class

---

[33]*See Powers v. Stuart-James Co., Inc.*, 192 F.R.D. at 318.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    17

predominate over questions affecting only individual members, and that a class action be superior

to other available methods for the fair and efficient adjudication of the controversy. These common

issues need only predominate; they need not be dispositive of the entire litigation. Rule 23 directs

the trial court to base its conclusions as to these issues upon "all relevant facts and circumstances"

and further directs the court to consider the following four factors in deciding that class certification

is appropriate under Rule 23(b)(3):

> (i) the interest of members of the class in individually controlling the
>
> prosecution of separate actions;
>
> (ii) the extent and nature of any litigation concerning the controversy
>
> already commenced by or against members of the Class;
>
> (iii) the desirability or undesirability of concentrating the litigation of
>
> the claims in the particu]ar forum; and
>
> (iv) the difficulties likely to be encountered in the management of a
>
> class action.

**1. Common questions of law and fact predominate.**

Common questions of law and fact are generally held to predominate if they represent a

significant aspect of the case and can be resolved for all class members in a single adjudication.[34]

"Courts generally focus on the liability issue in deciding whether the predominance requirement is

---

[34]*See* 7A Wright, Miller & Kane, FED.PRAC. & PROC., § 1778 at 528.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    18

met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."[35]

Common questions of law or fact clearly predominate in this case. As alleged in the Complaint, Defendants have defrauded Plaintiffs and the Class by three means; (1) despite their duty to Plaintiffs, Defendants omitted to inform them of material information, leading to Plaintiffs' losses; (2) Defendants' fraud created a market for unregistered securities, being the fraudulently issued promissory notes, and the market for FOREX's securities, and but for that fraud those securities would have been unmarketable; and (3) Defendants engaged in a common course of fraudulent conduct by participating in the FOREX Ponzi scheme.

The court in *Walco Investments, Inc. v. Thenen* held that common issues predominated and certified the class based on these same theories.[36] That case, like this one, involved a Ponzi scheme fraud. Defrauded investors sued banks and law firms that engaged in the scheme, and sought class status. Although the defendants argued that individual rather than common issues predominated, this Court rejected that argument, and certified the class.

In the *Walco* Ponzi scheme securities litigation, the Court explained that common issues predominated for three reasons. First, because the Defendants' failure to disclose the Ponzi scheme was the Plaintiffs' central claim, the case was primarily based on omissions, allowing class treatment based on *Affiliated Ute Citizens of Utah v. United* States and the presumption of reliance contained therein.[37] Second, because the Ponzi scheme fraud created the market for the securities, and but for

---

[35]*In re: Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986)(*quoting Dura-Bilt Corporation v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89, 93 (S.D.N.Y. 1982)); *Rudolph v. Department of Corrections*, 2002 WL 32182165, at *13 (Fla. Cir. Ct. 2002); *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 234 (M.D. Fla. 1993).

[36]168 F.R.D. 315 (S.D. Fla. 1996).

[37]406 U.S. 128, 153-54 (1972). *See Walco*, 168 F.R.D. at 330-32.

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    19

that fraud these securities would not have been marketable, a "fraud on the market" theory applied.[38]

And third, common questions predominated because "the Defendants, through their acts and

omissions, were engaged in a common course of conduct to defraud investors."[39]

The principles this Court applied in *Walco* apply squarely here as well. Cases such as this

one, involving primarily omissions, are particularly suited for resolution as class actions. Reliance

is presumed under *Affiliated Ute,* obviating the need to examine the subjective beliefs of individual

plaintiffs.[40] Despite their duty to Plaintiffs as fiduciaries and trustees, the Defendants — like the

defendants in *Walco* — stood mute and never disclosed their failure to protect Plaintiffs' invested

funds, and the pillaging of those funds that resulted.

The fraud-on-the-market theory discussed in *Walco* also applies here. The MRT securities

were not traded on any open market. But for the fraudulent illusion of a fixed return on their

investment provided by MRT, the MRT investments could never have been successfully marketed.

See Comp. ¶30. Accordingly, a presumption of reliance applies, and class certification is

appropriate.[41]

Finally, the "common course of conduct" theory described in *Walco* renders class treatment

appropriate here as well. Actions based on improprieties in such standardized conduct are well

suited for class treatment because the litigation focuses upon that uniform conduct. In *Kirkpatrick*

*v. J C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988), the

---

[38]*Walco*, 168 F.R.D. 332-33 (citing *Ross v. Bank South, N.A.*, 885 F.2d 723, 729 (11th Cir. 1989)(*en banc*) and *Shores v. Sklar*, 647 F. 2d 462, 269 (5th Cir. 1981)).

[39]*Id.* at 333.

[40]*Id.* at 330-331.

[41]*Id.* at 332.

Eleventh Circuit explained that "a single conspiracy and fraudulent scheme against a large number of individuals" was "particularly appropriate" for class action treatment.[42] Individual Plaintiffs' claims will not vary from the claims of other members of the Class. The possibility of individual issues relating to damages clearly does not bar class certification. Moreover, certifying a class when there is an overriding common issue saves judicial resources by avoiding duplicate proceedings and proof. In this case, hundreds of individual lawsuits would simply duplicate proof of the predominant issues. A class action is simply the best method to address those issues.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The second part of subsection (b)(3) mandates consideration of whether a class action is superior to other methods to resolve the claims. The superiority requirement is, by its terms, a comparative method that presumes the availability of other methods of adjudication,[43] and that assumes that the burden is on the defendant to establish the lack of superiority.[44] Therefore, in order to establish a lack of superiority, Defendants must show that there are alternative, "superior" methods of resolving the claims of the class members.[45]

This is particularly important in cases such as this where, because of the relatively small size of many of the investments of Class members, individual actions are not generally available to them, nor can they be efficiently pursued. Indeed, the Supreme Court in *Phillips Petroleum Co. v. Shutts,*

---

[42]*Kirkpatrick.*, 827 F.2d at 725 (citation omitted).

[43]*Partain v. First Nation Bank of Montgomery*, 59 F.R.D. at 61.

[44]NEWBERG ON CLASS ACTIOINS, § 4.27, p. 4-108.

[45]*See M. Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 487 (E.D. Pa. 1977).

recognized that without a class action, many small claims would never be adjudicated.

> Class actions also may pennit the plaintiffs to pool claims which would be uneconomical to litigate individually... This lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available.[46]

Fed. R. Civ. P. 23(b)(3) identifies four factors which should he examined by the courts to determine whether class treatment would be fair and efficient:

> (i) the interest of members of the class in individually controlling the prosecution of separate actions;

> (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

> (iv) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (iv) the difficulties likely to be encountered in the management of a class action.[47]

All of these factors militate in favor of maintenance of a class action in this case. Because the harm suffered by many Class members is relatively small, if this action is not maintained as a class

---

[46]*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809. See *Deposit Guarantee Nat'l Bank v. Roper,* 445 U.S. 326 (3980) (When it is economically infeasible for claimants to file individual damage suits, aggrieved persons may be without effective relief unless the class action device is available).

[47]Fed. R. Civ. P. 23(b)(3)(A)-(D).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                    22

action, there will be little interest (or economic rationale) among many class members in bringing

their own individual actions. As described above, the Class members are geographically dispersed.

To require separate suits in this case would be "prohibitive and ridiculous and would deprive many

of a remedy."[48] Given that MRT operated in this district, the individual Defendants live here, and

much of the harm occurred here, concentrating the litigation here is appropriate, and will facilitate

the comprehensive resolution of all claims against Defendants in a single court. The management of

the class presents no particular difficulties. All Class members should be easily identifiable from

records maintained by Defendants. If the class is not certified, Defendants' wrongful conduct will go

undeterred.

### 3. Other considerations under Rule 23(b)(3).

It also bears mentioning that the additional considerations under Rule 23(b)(3) support the

conclusion that class certification will be superior to individual lawsuits. The costs and expenses of

such individual actions, particularly when weighed against the individual recovery obtainable, would

be prohibitive. Since no Class member possesses a sufficiently strong interest in individually

controlling the prosecution of separate actions, and since the Class members "are in a poor position

to seek legal redress, . . . because such redress is disproportionately expensive," a class action is

essential to bring them some measure of justice.[49]

Prosecution of this case as a class action will "achieve economies of time, effort and expense,

and promote uniformity of decisions as to persons similarly situated.''[50] The alternative will likely

---

[48]See *Kennedy v. Tallant,* 710 F.2d at 718.

[49]*In re Amerifirst Securities Litig.,* 139 F.R.D. at 425. Tn addition, any Class member who wishes to control his own claim may "opt-out" of the Class under Rule 23(c)(2) in order to bring a separate action.

[50]*See Doglow v. Anderson*, 43 F.R.D. 472, 488 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2nd Cir. 1970).

Katz et al. v. MRT Holdings LLC et al. Case no. CIV-COHN-07-6138                                    23

mean no recourse for investors to whom the courthouse doors would effectively be closed, or a

"multiplicity and scattering of suits with the inefficient administration of litigation which follows in

its wake."[51]

## III. <u>CONCLUSION</u>

Plaintiffs respectfully urge this Court to certify this case as a class action pursuant to Rule

23(a) and (b)(3), designating Plaintiffs and their counsel as representatives of and counsel for the

Class, respectively, and for such other relief as this Court deems appropriate.

---

[51]*Green v. Wolf Corp*., 406 F.2d 291, 301 (2nd Cor. 1968).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the original was furnished by U.S. mail to MRT Holdings LLC, 7744 Peters Road, Suite 119, Plantation, Florida 33324, James Clements, 3771 State Road 84 #203, Plantation, FL 33324, Zeina Smidi, 12841 SW 13th Manor, Davie, FL 33324 this 25th day of April, 2008.

By:   <u>ss//Jeffrey R. Sonn</u>
Jeffrey R. Sonn, Esquire
Florida Bar Number: 773514
*Jsonn@sonnerez.com*
SONN & EREZ, PLC
Broward Financial Centre
500 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33394
Telephone: (954) 763-4700
Facsimile:  (954) 763-1866

P:\Katz, Marvin\motioncertify.wpd

# MRT HOLDINGS

Eloise Dabney
16420 N.w 18th Street
Pembroke Pines, FL 33028

Dear Friends, Clients, and Referral Account Managers,

MRT LLC Has had two great years in our currency trading accounts. We first started out with a backyard BBQ idea and shared "The Secret" movie concept with you. We knew as a team of friends and family that we were working toward something great.

We did it, we have grown into a $50,000,000.00 success. MRT HOLDINGS is proud and thankful for our great success. Over these past years we continued to deliver your interest rate to each one of you even though there were some extremely lean months in currency trading. We knew we had to keep our commitments and promises to you as a lender to our company. We've had a great run, and have gained substantial financial rewards. Time and the economic markets are changing and so is our companies' philosophy.

For those of you that follow the stock market and Wall Street, economic reports are mixed and have had their seesaw days. The world picture has changed along with our global emerging markets. We have hired advisors, consultants to help us make a prudent, responsible decision for our company and for you as a financial lender to our company.

We have been in transition for the last 6 months. We shared with you in our last letter that we have gone off shore. **MRT HOLDINGS is a licensed international capital management firm that is based in Nassau.** As with many other large corporations and companies, we feel this is the most productive and the best financial move for you and our company. It allows us to be a capital diversified company, to guard your assets and give all of us financial privacy.

Our company has chosen to use the experience of Switzerland's oldest, highly professional, prestigious and prolific Swiss banking services. So many companies, corporations, rich investors, and the wealthiest people of the world have been invested overseas for years. We want our money working with the best Swiss Banks in Switzerland and advisors.

MRT HOLDINGS is entering into a new journey with the same ideals, reliability, commitments, responsibility, and focus. We have been advised to exit the risky market of currency trading and we began searching for a high yielding product that also offered a high level of security.

We introduce to you our Fixed Rate Account which **assigns a promissory note to your principal and as history dictates, pays up to 25% a year. The Fixed Rate Account** has an option for renewal every year and funds may be withdrawn once the note has expired (12 months).

We also offer a **High Yield Savings Account which pays up to 15% a year.** The Savings Account allows for withdrawals monthly.

**July 1st will be the last statement with your present interest rate with MRT LLC. As of this date, all accounts will be automatically transferred to MRT Holdings in a High Yield Savings Account.** We urge you to complete the new product forms that we have provided you with. This will assure you a smooth and rapid transfer. We want your money to keep working and earning great returns for you.

Completing your transfer is easy:

1. Fill out the forms included and return to us at 7744 Peters Road #119, Plantation FL 33324.
   *Note: On Transfer Agreement Form, please include your 7/1/7 Balance.*
2. Request a promissory note at www.mrtholdings.com.pa.  (Click on Deposits) and complete the online form. A promissory note will be emailed to you within 48 hours. Complete and return the note to the address above.


**Please note:**

If you want monthly disbursements, be sure not to put all your funds in our Fixed Rate account. You might want to open High Yield Savings account as well for your disbursements.

All future deposits MUST meet the minimum required deposit amount stated from the MRT HOLDINGS website under that account type. The minimum amount required to open an account is $1,000.00 for the High Yield Savings Account and $5,000.00 for the Fixed Rate Account.


Your letters of gratitude, inspiration, and joy have made a difference, and warmed our hearts.
We look to the future with you as our client, to keep our goals and financial prosperity on course.

Sincerely,

The MRT Support Team
Jim Clement and Zeina Smidi


Attachment: NEW ACCOUNT APPLICATION, TRANSFER AGREEMENT